Filed 7/22/22 (unmodified opn. attached)
**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| DAIMLER TRUCKS NORTH AMERICA LLC,<br><br>     Petitioner,<br><br>     v.<br><br>THE SUPERIOR COURT OF LOS ANGELES COUNTY,<br><br>     Respondent;<br><br>YONGQUAN HU et al.,<br><br>     Real Parties in Interest. | B316199<br><br>(Los Angeles County<br>Super. Ct. No. 21STCV07830)<br><br>**ORDER MODIFYING OPINION**<br><br>[There is no change in judgment] |

BY THE COURT:

It is ordered that the opinion filed herein on July 7, 2022, is modified as follows:

    1.    On page 10, second paragraph, delete the sentence that reads

        As with the present case, the "vehicles were designed and manufactured elsewhere, and the company had

originally sold the cars at issue outside the forum States. Only later resales and relocations by consumers had brought the vehicles to Montana and Minnesota [the forum states]." (Ford, supra, 141 S.Ct. at p. 1020.)

and replace with:

As with the present case, the vehicles at issue had been designed, manufactured, and originally sold outside the forum states. Resales and customer relocations had brought the vehicles to the forum states. (*Ford, supra*, 141 S.Ct. at pp. 1022-1023.)

There is no change in judgment.

_____

RUBIN, P. J.                    BAKER, J.                    MOOR, J.

2

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| DAIMLER TRUCKS NORTH AMERICA LLC, | B316199 |
| Petitioner, | (Los Angeles County Super. Ct. No. 21STCV07830) |
| v. | |
| THE SUPERIOR COURT OF LOS ANGELES COUNTY, | |
| Respondent; | |
| YONGQUAN HU et al., | |
| Real Parties in Interest. | |

ORIGINAL PROCEEDINGS; petition for writ of mandate. Curtis A. Kin, Judge.  Petition denied.

Nelson Mullins Riley & Scarborough, Philip R. Cosgrove and Ryan E. Cosgrove, for Petitioner.

No appearance for Respondent.

Strassburg, Gilmore & Wei, William R. Gilmore, for Real Parties in Interest.

_____

### *INTRODUCTION*

Petitioner Daimler Trucks North America LLC (Daimler) is a defendant in a lawsuit brought by real parties in interest Yongquan Hu and Jinghua Ren (collectively, Hu). Hu seeks to recover for injuries stemming from a truck accident that occurred in Oklahoma.[1] Daimler filed a motion to quash for lack of personal jurisdiction, which the trial court denied. In this petition for a writ of mandate, Daimler argues the motion to quash should have been granted because the operative facts do not establish Daimler is subject to jurisdiction in California. Daimler additionally challenges the trial court's rulings on its evidentiary objections. We deny the petition for writ of mandate.

### *FACTUAL AND PROCEDURAL BACKGROUND*

### 1.  *The Long Distance Tractor-Trailer Accident*

Sometime prior to March 21, 2020, Mr. Hu and Ran Gao, both California residents and long-distance tractor-trailer drivers, made their way from California to the east coast. On that date, they were on the return trip to California, transporting goods from New Jersey. While Gao was driving on Interstate 40 in Oklahoma City, Oklahoma, the tractor-trailer was involved in a single vehicle accident. Mr. Hu was seriously injured.[2]

The 2016 Freightliner Cascadia truck in which the two were riding was originally sold by Daimler. Per Daimler's person most knowledgeable, Cascadias are intended to be used for journeys across multiple state lines. Daimler's website states the Cascadia is an "on-highway truck" with an interior designed for

---

[1]  Ren is Mr. Hu's wife and brought suit for loss of consortium.

[2]  Mr. Gao is not a party to this appeal.

drivers who may spend more than 100 hours per week in the cab. In 2015, Daimler sold the Freightliner in which Mr. Hu was riding to Werner Enterprises and shipped the truck to Georgia. Werner Enterprises maintains a national truck fleet based in Nebraska. It has a hub in Fontana, California, where it sells used trucks. In 2019, Mr. Hu's employer, a California corporation, bought the subject Freightliner Cascadia from Werner Enterprises' Fontana hub.

**2. _Daimler's Freightliner Business_**

Daimler is a Delaware limited liability company with its principal place of business in Portland, Oregon. Daimler owns the Freightliner brand. Although Daimler does not manufacture or assemble vehicles in California, it does conduct considerable business in the state.

Daimler advertises Freightliner trucks, including the Cascadia specifically, across multiple national and regional media that is also directed to California. Daimler has 32 authorized dealerships in California that sell Freightliners. Customers can order the vehicles at these dealerships; Daimler then assembles the specified vehicles and delivers them to the dealership. Between 4,000 to 5,000 trucks were sold in California each year from 2014 to 2020. Authorized dealerships advertise Freightliner trucks, and Daimler provides the dealerships with information for display advertising purposes. Daimler also sells and ships truck parts to 27 of these authorized California dealerships. The dealerships offer a variety of specialized maintenance and repair services. Twenty-three of the authorized California dealerships service Freightliner trucks. There are 11 truck "Elite Support" locations in California. These service centers offer customers the services of mechanics who receive

3

"continual training from the experts at Freightliner" and must meet specific criteria. Nine "ServicePoint" locations in California offer 24/7 service, repairs, parts, inspections, and trailer maintenance. Seven "Body Shop" locations in California provide Freightliner crash repair and other repair services not often available in a typical dealership. Hundreds of these service shops are located in the United States.

Daimler also provides telephone and online support that is available in California—its website claims that "no matter where you are, we've got you covered." This support includes a 24/7 helpline that provides technological support, roadside assistance, towing, and referral to service locations for Freightliners. The "Detroit Connect" service can monitor Freightliner trucks' driving performance. One feature of this service is that it transmits fault codes to Daimler. Daimler is then able to notify the truck's owner of the problem and refer them to an authorized service location for service.

### 3. *Lawsuit against Daimler and the Motion to Quash*

In March 2021, Hu filed suit against Daimler and other (non-appealing) defendants, alleging products liability, negligence and loss of consortium claims against the company.

Daimler filed a motion to quash and asserted lack of personal jurisdiction. Daimler argued it was not subject to specific jurisdiction in California, primarily because the causes of action did not arise out of or relate to its forum-related activities.[3] Daimler did not engage in any activity dealing with the subject

---

[3] Daimler also argued below that it was not subject to suit in California based on general jurisdiction. As will become apparent, we decide the case based on specific jurisdiction. Accordingly, we do not address general jurisdiction.

Freightliner Cascadia that took place in, or was directed at, California. According to Daimler, no activity in California caused the injuries.

Hu opposed the motion. He argued Daimler was subject to specific jurisdiction because it had purposefully availed itself of the privilege of doing business in California by marketing, selling, and servicing within the state the same model of Freightliner truck involved in the accident. The Cascadia was specifically designed for long hauls, and "was outfitted with a specially designed sleeping compartment for this purpose." And because Daimler had "systematically served a market in California for the very vehicle that the Plaintiffs allege was defective and injured them," Hu's claims related to Daimler's contacts with California. Other ties to California were that Mr. Hu and his wife are California residents, Mr. Hu was working for a California company and driving to California at the time of the accident, the subject vehicle was purchased in California, and the bulk of the damages for pain and suffering and medical expenses occurred and would continue to occur in California. Hu continued that, by marketing, selling, servicing and supporting their Freightliner trucks in California, Daimler had notice it could be subject to suit there. The fact the particular truck involved in this litigation came to California through an intermediary did not make jurisdiction unfair, especially because Daimler certainly understood that some of its trucks likely would be resold in California. That the injury occurred out of state did not defeat jurisdiction either. Daimler's extensive business operations in this state supported a finding of personal jurisdiction, as did the fact that it knew—and its marketing campaign promoted—that the Freightliner trucks would be used by its owners for cross-

5

country transportation. According to Hu, a necessary incident of Daimler's business was the risk that its activities in any state could foreseeably cause injury to a person in a distant forum.

Hu asserted that jurisdiction also comported with notions of fair play and substantial justice. Daimler was an international corporation, while Mr. Hu and his wife were California residents. California had an interest in hearing the dispute because it involved Daimler's allegedly unsafe product that was regularly being sold in this state and which injured two California residents. Hearing the case in California would also promote judicial efficiency because California had jurisdiction over the other defendants.

4.     *Ruling on the Motion to Quash*

The trial court denied the motion, finding that it could exercise specific jurisdiction over Daimler. The court began by assessing the three elements necessary for a finding of specific jurisdiction: " '(1) the defendant has purposefully availed itself of forum benefits with respect to the matter in controversy; (2) the controversy is related to or arises out of the defendant's contacts with the forum; and (3) the assertion of jurisdiction would comport with fair play and substantial justice.' (*Virtual Magic Asia, Inc. v. Fil-Cartoons, Inc.* (2002) 99 Cal.App.4th 228, 238–39, citing *Sonora Diamond Corp. v. Superior Court* (2000) 83 Cal.App.4th 523, 526.)"

*The first element*. The trial court found the first element was satisfied by the extent of Daimler's business in California. The court identified Daimler's national advertising campaigns (that were directed to California) in magazines, radio, and digital media; Daimler's policy that allowed authorized dealerships to advertise the subject vehicle—32 of those dealerships sold the

6

subject vehicle in California; Daimler's sales of between 4,000 to 5,000 trucks per year in California between 2014 and 2020; its program of servicing vehicles in California and shipping parts for the subject vehicle to 27 "authorized parts/sales locations" in California; Daimler's adoption of its "fault code" plan to enable it to monitor the performance of the Freightliner trucks; and, finally, Daimler's creation of a 24/7 helpline. "The advertising, selling, and servicing of a product in a forum state supports a finding that the manufacturer of that product purposefully availed itself of the benefits of the forum state."

*The second element.* The trial court found that the second prong was also met—the claims themselves were sufficiently related to Daimler's "selling of Freightliner trucks in California." Mr. Hu and his wife were California residents, Mr. Hu was headed to California to deliver goods when the accident occurred, the subject vehicle was purchased in California, and Daimler intended the vehicle to be driven in interstate transport. That the accident occurred in Oklahoma on the way to California did not negate that the claims arose out of or had a substantial connection with a business relationship Daimler purposefully established with California. Where "Daimler knowingly promotes and directs to California residents the sale and servicing of its truck designed to transport goods across multiple states, and where a California resident is injured transporting goods across states lines to California while in one of those trucks (which had been sold in California to a California company), that resident's claims of injury are sufficiently related to Daimler's activities in California, even if the accident causing the injury happened to occur in another State while defendant's truck was en route to California."

*The third element.* For the third prong, the trial court concluded jurisdiction would comport with fair play and substantial justice. California has a strong interest in providing a local forum for its residents to redress injuries inflicted by out of state defendants. The other defendants are California residents, and litigating the claims in one forum would avoid a multiplicity of suits and conflicting adjudications. Finally, the intended interstate purpose of Daimler's trucks and the purposeful availment of the California market for the sale of those trucks supported the reasonableness of having Daimler defend against the claims in California.

**5. Writ Proceedings**

Daimler filed in this court a petition for writ of mandate, challenging the trial court order denying the motion to quash. On December 16, 2021, we issued an order to show cause why the relief sought in the petition should not be granted. Hu filed a return, and Daimler filed a reply.

### DISCUSSION

In its writ petition, Daimler alleges the trial court principally erred because the court failed to identify the requisite direct causal connection or relationship between the injuries and Daimler's activities in California. Daimler also argues the order violated the traditional notions of fair play and substantial justice because California's interest in the dispute is secondary to that of Oklahoma, where the accident occurred. Finally, Daimler claims that the trial court improperly overruled its evidentiary objections to opposing counsel's declaration.

**1. Principles of Personal Jurisdiction**

California courts may exercise personal jurisdiction over a nonresident defendant on any basis not inconsistent with the

constitutions of this state or the United States. (Code Civ. Proc., § 410.10; *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444 (*Vons Companies*).) "The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts. [Citation.] Although a nonresident's physical presence within the territorial jurisdiction of the court is not required, the nonresident generally must have 'certain minimum contacts . . . such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." ' *International Shoe Co. v. Washington* [(1945)] 326 U.S. 310, 316 (quoting *Milliken v. Meyer* [(1940)] 311 U.S. 457, 463)." (*Walden v. Fiore* (2014) 571 U.S. 277, 283.)

"When determining whether specific jurisdiction exists, courts consider the ' "relationship among the defendant, the forum, and the litigation." ' [Citations.] A court may exercise specific jurisdiction over a nonresident defendant only if: (1) 'the defendant has purposefully availed himself or herself of forum benefits' [citation]; (2) 'the "controversy is related to or 'arises out of' [the] defendant's contacts with the forum" ' [citations]; and (3) ' "the assertion of personal jurisdiction would comport with 'fair play and substantial justice' " ' [citations]." (*Pavlovich v. Superior Court* (2002) 29 Cal.4th 262, 269.)

On a motion to quash for lack of personal jurisdiction, the plaintiff has the initial burden to demonstrate facts justifying the exercise of jurisdiction. If the plaintiff does so, the burden shifts to the defendant to show that exercising jurisdiction would be unreasonable. If there are no evidentiary conflicts, the existence of jurisdiction is a legal question that calls for our independent review. (*Vons Companies, supra*, 14 Cal.4th at p. 449.)

**2.** ***Daimler Has Purposefully Availed Itself of Forum Benefits***

The first of the three elements Hu must establish is that the defendant purposefully availed itself of forum benefits. The defendant must take " 'some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State.' *Hanson v. Denckla* [(1958)] *357 U.S. 235, 253*[.] The contacts must be the defendant's own choice and not 'random, isolated, or fortuitous.' *Keeton v. Hustler Magazine, Inc.* [(1984)] 465 U.S. 770, 774[.] They must show that the defendant deliberately 'reached out beyond' its home—by, for example, 'exploi[ting] a market' in the forum State or entering a contractual relationship centered there. *Walden v. Fiore*, 571 U.S. 277, 285[] (2014)." (*Ford Motor Company v. Montana Eighth Judicial District Court* (2021) ___ U.S.___ [141 S.Ct. 1017, 1024–1025] (*Ford*).)

*Ford* is the United States Supreme Court's most recent pronouncement on personal jurisdiction. In *Ford*, the plaintiffs brought suit for injuries resulting from two unrelated accidents involving Ford vehicles, one in Montana and the other in Minnesota. As with the present case, the "vehicles were designed and manufactured elsewhere, and the company had originally sold the cars at issue outside the forum States. Only later resales and relocations by consumers had brought the vehicles to Montana and Minnesota [the forum states]." (*Ford, supra*, 141 S.Ct. at p. 1020.) The company conceded purposeful availment, which the Supreme Court noted was a "small wonder": "By every means imaginable—among them, billboards, TV and radio spots, print ads, and direct mail—Ford urges Montanans and Minnesotans to buy its vehicles, including (at all relevant

10

times) Explorers and Crown Victorias.  Ford cars—again including those two models—are available for sale, whether new or used, throughout the States, at 36 dealerships in Montana and 84 in Minnesota.  And apart from sales, Ford works hard to foster ongoing connections to its cars' owners.  The company's dealers in Montana and Minnesota (as elsewhere) regularly maintain and repair Ford cars, including those whose warranties have long since expired.  And the company distributes replacement parts both to its own dealers and to independent auto shops in the two States.  Those activities, too, make Ford money.  And by making it easier to own a Ford, they encourage Montanans and Minnesotans to become lifelong Ford drivers." (*Id*. at p. 1028.)

Like Ford, Daimler advertised across multiple media nationally and regionally, including in California, urging purchases of Cascadia vehicles as well as other Freightliner trucks.  Daimler sells Freightliner models through 32 dealerships located in California.  Thousands of trucks have been sold in California.  Daimler also takes various measures to ensure those customers will continue to have relationships with Freightliner.  Daimler sells and ships truck parts to 27 California dealerships.  A number of those dealerships provide specialized maintenance and repair services for Freightliners.  Some of the locations provide Freightliner-trained specialists.  Daimler also furnishes technological support by which customers are directed to Freightliner service locations.  It is not seriously disputed that Daimler does substantial business in California and "actively seeks to serve the market for [Freightliner trucks] and related products" in that state. (*Ford*, *supra*, 141 S.Ct. at p. 1026.)

We agree with the trial court that Hu satisfied the first of the three elements necessary for personal jurisdiction.[4]

### 3. *Hu's Claims "Relate to" Daimler's Forum Contacts*

In order for a plaintiff to establish personal jurisdiction, the claims " 'must arise out of or relate to the defendant's contacts' with the forum. [Citations.] Or put just a bit differently, 'there must be "an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.' " [Citation.]" (*Ford, supra*, 141 S.Ct. at p. 1025.) The first half of the " 'arise out of *or relate to*' " standard "asks about causation; but the back half, after the 'or,' contemplates that some relationships will support jurisdiction without a causal showing." (*Id.* at p. 1026.) "[T]he phrase 'relate to' incorporates real limits, as it must [] adequately protect defendants foreign to a forum. But again, we have never framed the specific jurisdiction inquiry as always requiring proof of causation—*i.e.,* proof that the plaintiff's claim came about because of the defendant's in-state conduct." (*Ibid*.)

The *Ford* Court added a new layer to specific jurisdiction caselaw, figuratively putting in bold font the "or" in " ' "must arise out of **or** relate to the defendant's contacts . . . ." ' " Even the two concurring justices agreed that the Court's majority

---

[4]     Although not explicitly conceding the point, Daimler does not raise much of any argument that Hu did not satisfy the first element: "Assuming *arguendo* that [p]laintiffs proved the first element of specific jurisdiction, the [r]espondent [c]ourt's ruling was erroneous because [p]laintiffs wholly failed to meet the second element."

opinion no longer treated the second element as a single, tethered standard and that it is now to be read in the disjunctive. (*Ford*, *supra*, 141 S.Ct. at p. 1033 (conc. opn. of Alito, J.); *id.* at p. 1034 (conc. opn. of Gorsuch, J.).) The concurring justices also agreed that "relate to" does not require causation. (*Id.* at p. 1033 (conc. opn. of Alito, J.); *id.* at p. 1034 (conc. opn. of Gorsuch, J.).)

Daimler argues that Hu's claims do not "relate to" Daimler's activities in California for two reasons: (1) Daimler "did not design, manufacture, assemble, or sell *the subject vehicle in California*" and (2) "the injuries and accident occurred in Oklahoma."

As for the claim that specific jurisdiction is lacking because Daimler did not design, manufacture, assemble, or sell the very Freightliner involved in California, that argument was squarely rejected by the high court in *Ford*. Much like the present case, Ford's forum-related activities with the two Ford vehicles involved in the Montana and Minnesota accidents was virtually non-existent, as Ford had not designed, manufactured, or sold the subject vehicles in those states. (*Ford*, *supra*, 141 S.Ct. at p. 1023.) The Supreme Court was unconvinced that jurisdiction could only exist if the company had designed, manufactured, or sold in the state the *particular* vehicle involved in the accident. "[T]hat argument merely restates Ford's demand for an exclusively causal test of connection—which we have already shown is inconsistent with our caselaw." (*Id.* at p. 1029.) The systematic contacts in the forum states (including contacts as to the specific types of vehicles at issue) rendered Ford accountable for the in-state accidents despite the out of state sale, even if the contacts in the forum states did not directly cause the injuries. (*Ibid.*) This would remain the case even if, as Ford suggested,

13

that without the company's Montana or Minnesota contacts, the plaintiffs' claims would be the same. (*Ibid*.) The fact remains that Daimler's Freightliner trucks were manufactured and marketed for precisely this type of intercontinental long haul trip. Daimler sold the California market on trips that emanate from California to other states and back, exactly the use present here.

As for Daimler's argument that jurisdiction was defeated because the accident did not occur in California, *Ford* deemed the place of injury as something that "may be relevant in assessing the link between the defendant's forum contacts and the plaintiff's suit," but did not hold that an in-state injury was a prerequisite for jurisdiction. (*Ford, supra*, 141 S.Ct. at pp. 1031– 1032.) As observed by *Ford*'s concurring justices, what would suffice for a claim to "relate to" a defendant's forum contacts was left rather undefined, with the majority simply stating "relate to" "does not mean anything goes," and "incorporates real limits." (*Id.* at p. 1026.) To give an example of the absence of specific jurisdiction under the "relate to" standard, the court discussed this hypothetical: a California court hearing a claim against Ford brought by an Ohio plaintiff based on an accident occurring in Ohio involving a car purchased in Ohio. (*Id.* at p. 1027, fn. 3.) The example matches neither the facts of *Ford* nor the present case. It does, however, bear some resemblance to *Bristol-Myers Squibb Co. v. Superior Court* (2017) ___ U.S.___ [137 S.Ct. 1773] (*Bristol-Myers*), a case Daimler argues negates jurisdiction over injuries arising from the Oklahoma accident.

In *Bristol-Myers*, the plaintiffs brought suit in California based on injuries they suffered after taking the prescription drug Plavix. The defendant was a pharmaceutical company

14

incorporated in Delaware, headquartered in New York, with operations in New York and New Jersey. The company engaged in some research, sales, and government advocacy activities in California, none involving Plavix, although it sold the drug there. The company did not develop Plavix in California, create a marketing strategy for Plavix in California, or manufacture, label, package, or do business in California on the regulatory approval of the product. The plaintiffs included nonresidents who did not obtain Plavix through a California source, did not ingest Plavix in California, were not injured by Plavix in California, and were not treated for injuries in California. (*Id.* at pp. 1778, 1781.) The Court concluded California was not the appropriate forum for those plaintiffs: "What is needed—and what is missing here—is a connection between the forum and the specific claims at issue." (*Id.* at p. 1781.)

The *Ford* court reminded that jurisdiction was lacking in *Bristol-Myers* "because the forum State, and the defendant's activities there, lacked any connection to the plaintiffs' claims." (*Ford, supra*, 141 S.Ct. at p. 1031.) The *Bristol-Myers* plaintiffs were "engaged in forum-shopping—suing in California because it was thought plaintiff-friendly, even though their cases had no tie to the State." (*Ibid.*)

The *Ford* court found important distinctions between its case and *Bristol-Myers*, distinctions that we find exist here. That Mr. Hu and his wife are both California residents weighs in favor of specific jurisdiction. A plaintiff's residence can "be relevant in assessing the link between the defendant's forum contacts and the plaintiff's suit." (*Ford, supra*, 141 S.Ct. at pp. 1031–1032.) The *Ford* court found that the plaintiffs' residency in the forum states supported jurisdiction, and the plaintiffs' lack of forum

15

residency weighed against personal jurisdiction in *Bristol-Myers*. (*Id.* at p. 1031; *Bristol-Myers*, *supra*, 137 S.Ct. at p. 1782.) Mr. Hu also used the allegedly defective subject vehicle in California, as the outbound leg of his travel that resulted in his injuries began in California. *Ford* found that the subject vehicles' use in the forum states supported jurisdiction there, and stood in contrast to the fact that the *Bristol-Myers* plaintiffs did not ingest Plavix in California. (*Ford*, at p. 1031; *Bristol-Myers*, at p. 1781.) *Bristol-Myers* differs from the present case in another significant way, although one not discussed in *Ford*—In *Bristol-Myers,* the Court observed that the nonresident plaintiffs did not seek treatment for their injuries in California and did not claim to have suffered harm in that state. (*Bristol-Myers*, at pp. 1778, 1781, 1782.) In contrast, Hu seeks recovery of damages for, among other things, past and future medical expenses and loss of consortium. As Mr. Hu and his wife are California residents, medical expenses will have been incurred in California, and the harm due to the loss of consortium would have been suffered in California. Finally, as in *Ford* (but not *Bristol-Myers*), Daimler has "systematically served [the California] market" by advertising, selling, and servicing Freightliner trucks (including Cascadias) in California. (*Ford*, *supra*, 141 S.Ct. at p. 1028.)

We conclude that Daimler's activities supporting the sale and service of the Freightliner Cascadia in this state, and the other facts that we have discussed, demonstrate that Hu's claims "relate to" those very California activities.

4.    ***Assertion of Jurisdiction Comports with Fair Play and Substantial Justice***

"[T]he burden on the defendant, while always a primary concern, will in an appropriate case be considered in light of other

relevant factors, including the forum State's interest in adjudicating the dispute [citation]; the plaintiff's interest in obtaining convenient and effective relief, [citation], at least when that interest is not adequately protected by the plaintiff's power to choose the forum, [citation]; the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies." (*World-Wide Volkswagen Corp. v. Woodson* (1980) 444 U.S. 286, 292.)

As the U.S. Supreme Court found in *Ford*, Daimler's business activities in California make it fair to allow jurisdiction here. "In conducting so much business in Montana and Minnesota, Ford 'enjoys the benefits and protection of [their] laws'—the enforcement of contracts, the defense of property, the resulting formation of effective markets. [Citation.] All that assistance to Ford's in-state business creates reciprocal obligations—most relevant here, that the car models Ford so extensively markets in Montana and Minnesota be safe for their citizens to use there. Thus our repeated conclusion: A state court's enforcement of that commitment, enmeshed as it is with Ford's government-protected in-state business, can 'hardly be said to be undue.' [Citation.] (*Ford*, *supra*, 141 S.Ct. at pp. 1029–1030.) "When minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." (*Asahi Metal Industry Co. v. Superior Court* (1987) 480 U.S. 102, 114.)

The fairness of a California forum is bolstered by this state's significant interests at stake in this litigation—providing residents with a convenient forum for redressing injuries inflicted

17

by non-resident actors and enforcing its own safety regulations. (*Ford*, *supra*, 141 S.Ct. at p. 1030.) These interests are not nullified by the location of the accident in another state.

While Daimler argues that "the fact that 7 other defendants can be sued in California has absolutely no bearing on the exercise of jurisdiction," and now suggests real parties could pursue a case in Oklahoma, we do not see it that way. That California has jurisdiction over the other defendants reinforces the notion that jurisdiction over Daimler comports with fair play. The rights of all the defendants can be adjudicated in one setting, not one part in California and another part in Oklahoma or Oregon or Delaware. A single suit is more economical, avoids the possibility of inconsistent judgments, and places post judgment proceedings, including any enforcement efforts, in one locale.

## 5. *The Court's Evidentiary Rulings, Even If Erroneous, Were Not Prejudicial*

"We apply the abuse of discretion standard when reviewing the trial court's rulings on evidentiary objections." (*Twenty-Nine Palms Enterprises Corp. v. Bardos* (2012) 210 Cal.App.4th 1435, 1447.) An "erroneous evidentiary ruling requires reversal only if 'there is a reasonable probability that a result more favorable to the appealing party would have been reached in the absence of the error.' [Citation.]" (*Id.* at p. 1449.)

Daimler raised multiple objections to a declaration filed by Hu's counsel in opposition to the motion to quash. We summarize the statements to which objections were made and ultimately overruled by the trial court: (1) At the time of the accident, Mr. Hu was transporting a load from New Jersey to California; (2) Mr. Hu's employer only purchases Freightliner trucks, and those trucks are serviced at "ServicePoint" locations;

18

(3) Mr. Hu was sleeping in a sleeping bunk using a restraint at the time of the collision; he then moved laterally, struck his head, and was rendered quadriplegic; (4) Daimler is registered and licensed with the California Secretary of State, with a designated agent for service of process in California; (5) Daimler has 12 California employees for whom it pays employment tax and in 2020 paid around $110,000.00 in various state taxes; (6) Daimler markets the Cascadia on its website, which details its features as well as the parts, servicing, and support offered.

Any error in these rulings was harmless. The trial court did not rely on statements 2, 3, 4, 5, or 6 in reaching its decision, so admitting those statements had no effect on the correctness of the motion to quash ruling. Even if we were to disregard this evidence, we would affirm the trial court's decision. The trial court referenced statement 1 – that at the time of the accident, Hu was transporting goods across state lines to California – as a fact supporting specific jurisdiction, but Daimler fails to demonstrate it is reasonably probable it would have received a more favorable result absent the statement's admission. Although we have referred to this evidence in our description of the proceedings below, we ignore it for purposes of our analysis. Accordingly, any error was harmless. (*People v. Valencia* (2021) 11 Cal.5th 818, 840 [applying the harmless error standard under *People v. Watson* (1956) 46 Cal.2d 818 to alleged hearsay evidence]; *People v. Fuiava* (2012) 53 Cal.4th 622, 671 [applying the *Watson* standard to testimony alleged to be irrelevant and lacking foundation].)

19

### *DISPOSITION*

The petition for writ of mandate is denied.  Real parties in interest Yongquan Hu and Jinghua Ren shall recover their costs in this proceeding.


RUBIN, P. J.

WE CONCUR:


BAKER, J.


MOOR, J.